UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF NEW YORK
───────────────────────────────────────────────

In re:

    Robert E. Haynes,                            Bankruptcy Case No. 19-20601-PRW
                                                                        Chapter 13

                   Debtor.
───────────────────────────────────────────────

**DECISION AND ORDER
GRANTING MOTION FOR RELIEF FROM STAY**

PAUL R. WARREN, U.S.B.J.

## I.
## OVERVIEW

      This chapter 13 case was filed to stop the public auction sale of real property in which Mr. Haynes resides. Steuben County holds title to the property, having been granted a default judgment and deed by a state court in a tax foreclosure action. The County has moved to lift the automatic stay, under 11 U.S.C. § 362(d)(1), asserting that Mr. Haynes' interest in the property was extinguished because the tax foreclosure proceedings were finalized before this case was filed. (ECF 20). In the alternative, the County argues that the hardship deferment agreement – entered into by the County and Mr. Haynes immediately before entry of judgment in favor of the County and transfer of the deed to the County – is an executory contract in default, that Mr. Haynes cannot assume and cure in the manner proposed in his amended chapter 13 plan. (ECF 20 ¶¶ 18-30).

      Under *Wisotzke v. Ontario Cnty.*, 409 B.R. 20 (W.D.N.Y. 2009) (Larimer, J.), *aff'd*, 382 Fed. Appx. 99 (2d Cir. 2010), because Mr. Haynes had been stripped of title to the real estate before this Chapter 13 case was filed, the property was not property of the estate at the time the

bankruptcy case was filed, under 11 U.S.C. § 362(a). Additionally, because the hardship deferral agreement had expired by its terms before this case was filed, there was nothing for the trustee to assume under § 365(a) of the Code when this case was filed. Alternatively, even if the hardship deferral agreement between the parties was an executory contract, Mr. Haynes' proposal, in his amended chapter 13 plan, to cure that default by making installment payments over a period ranging from 22 months to 60 months is not a prompt cure as is required by 11 U.S.C. 365(b)(1). The motion of the Steuben County to lift the automatic stay is **GRANTED**.

## II.
## JURISDICTION

The Court has subject matter jurisdiction under 28 U.S.C. §§ 157(a) and 1334(a). This is a core proceeding under 28 U.S.C. § 157(b)(2)(G) and (O). The Court makes these findings of fact and conclusions of law to the extent required by Rule 7052 FRBP.

## III.
## FINDINGS OF FACT

Mr. Haynes owned a modest home located in Lindley, New York. (ECF No. 20 ¶ 3). He failed to pay the real estate taxes assessed against the property for 2015, 2016 and 2017. (*Id.* at Ex. E). In November 2017, the County started an action to foreclose its tax liens under Article 11 of the New York Real Property Tax Law. (*Id.* at Ex. A). Under New York law, the last day for Mr. Haynes to redeem the property was May 3, 3018. (ECF 20, ¶5 and Ex. A). He failed to do so.

On March 20, 2018, under a local County law, Mr. Haynes applied for a "hardship deferral," by which (if approved) he would be afforded an approximately 12-month period to pay the delinquent taxes—and the County would agree to delay selling the foreclosed property at auction. (ECF No. 20, ¶¶ 11-13). Under a hardship deferment agreement, while the County

2

Case 2-19-20601-PRW, Doc 33, Filed 08/01/19, Entered 08/01/19 14:33:06, Description: Main Document , Page 2 of 10

would agree not to sell the property during the term of the agreement, the County was expressly permitted to take a default judgment of foreclosure and to take title to the property. (Id. at Ex. F).

On May 1, 2018, the County granted Mr. Haynes the requested hardship deferral. Under the deferral agreement, Mr. Haynes was given until March 29, 2019 to fully pay the delinquent taxes, with statutory interest and penalties–he was also required to timely pay any taxes coming due during the term of the agreement (the 2018 school taxes and 2019 county taxes would come due during that time). (ECF 20, ¶ 14 and Ex. G, H, K and ECF 30, ¶ 7). As permitted by the agreement, a default judgment in favor of the County was entered on May 3, 2018. (*Id*, at *¶¶ 7, 8 and Ex. C).* And, on May 7, 2018, a deed transferring title to the property to the County was filed. (*Id,* at Ex. D).

Mr. Haynes did not pay the delinquent taxes by the March 29, 2019 deadline. (*Id,* at Ex. F). He also did not pay the 2018 school taxes or the 2019 county taxes that came due during the term of the agreement. (*Id,* Ex. K). Instead, on June 17, 2019, nearly 3 months after the hardship deferral agreement had expired by its own terms–and over 13 months after title to the property had been transferred to the County–he filed this Chapter 13 case. (ECF No. 1). In his amended chapter 13 plan, Mr. Haynes proposes to pay the delinquent taxes in installments over a period of 22 months, with penalties and interest to be paid in installments over 60 months, and he commits to remain current on real estate taxes going forward. (ECF 26 ¶¶ 3.1, 4.1 and 8.1). The County has moved to lift the automatic stay, arguing that the property is not property of the estate and, alternatively, that Mr. Haynes is not proposing a prompt cure as required by the Code. (ECF No. 20). Both parties seem to assume that the hardship deferral agreement–which expired by its terms on March 29, 2019–is an executory contract.

3

Case 2-19-20601-PRW, Doc 33, Filed 08/01/19, Entered 08/01/19 14:33:06, Description: Main Document , Page 3 of 10

# IV.
# DISCUSSION

The County claims that any interest of Mr. Haynes in the property was extinguished by entry of the default judgment and deed in favor of the County in May 2018. (ECF No. 20 ¶ 17). Because the property was not "property of the estate," the County argues that there is no stay under 11 U.S.C. § 362(a). Alternatively, and additionally, the County argues that the hardship deferral agreement is an executory contract–under which there has been a default–so that the trustee cannot assume the contract without providing a prompt cure, under 11 U.S.C § 365(b)(1). (ECF 20, ¶ 19). The County argues that payment of the delinquent taxes in installments over 22 months under a chapter 13 plan, and payment of the penalties and interest on those taxes in installments over a period of 60 months, does not provide the statutorily mandated "prompt cure."

**A.    The Property Is Not "Property of the Estate" under 11 U.S.C. § 541(a)(1)**

Property of a debtor's estate includes "all legal or equitable interests of the debtor in property as of the commencement of the case." 11 U.S.C. § 541(a)(1). "Property interests are created and defined by state law. Unless some federal interest requires a different result, there is no reason why such interests should be analyzed differently simply because an interested party is involved in a bankruptcy proceeding." *Butner v. United States*, 440 U.S. 48, 55 (1979); *accord, Stern v. Marshall*, 546 U.S. 462 (2011). Here, whether the property was "property of the estate," under 11 U.S.C. § 541(a)(1), is determined by New York law. *See In re Rodgers*, 333 F.3d 64, 65 (2d Cir. 2003).

Under New York law, by operation of RPTL § 1131, Mr. Haynes lost title to the property on May 3, 2018, upon entry of the default judgment of foreclosure in the state court action. *See, Wisotzke*, 409 B.R. at 22; *see also, In re Heskell*, 2017 Bankr. LEXIS 2460 (Bankr. W.D.N.Y.

2017). Mr. Haynes lost legal and equitable title to the property pre-petition under state law, by failing to timely redeem the property under RPTL § 1131 and § 1184. *See, Wisotzke,* at 21. The filing of a Chapter 13 petition on June 17, 2019, did nothing to reverse the clock that had already counted down to zero under New York law. The Property was not "property of the estate" when Mr. Haynes filed his chapter 13 petition. *See, Wisotzke* (holding of District Court adopted by the Second Circuit); *see also, Miner v. Clinton Cnty.*, 541 F.3d 464, 474 (2d Cir. 2008); *Rodgers*, 333 F.3d at 68; *Heskell*, at *7-8. Because the property was not property of the estate, the protections afforded by the automatic stay under 11 U.S.C. § 362(a) do not apply to the property. The County is entitled to a comfort order confirming the absence of the automatic stay as to the property.

**B.     The Hardship Deferment Agreement Terminated Pre-Petition, According to Its Terms-- There Is Nothing Left for The Trustee to Assume**

The threshold question–raised by the Court at oral argument–is whether the hardship deferral agreement is an executory contract under § 365(c) of the Code. Both the County and Mr. Haynes ignored that question in their submissions, focusing instead on the issue of whether the chapter 13 plan provides for a prompt cure under § 365(b)(1) of the Code. But, if the agreement expired by its own terms and was terminated pre-petition, there would be no executory contract, and nothing left for the trustee to attempt to assume.

Under the hardship deferral agreement, Mr. Haynes was granted a date-specific extension of time to cure his default in payment of real estate taxes. Specifically, the agreement required that Mr. Haynes make full payment of the delinquent taxes, in lump sum, on or before March 29, 2019. He failed perform. The agreement also required Mr. Haynes to pay all new taxes coming due during the term of the agreement. The 2018 school taxes and 2019 county taxes came due during that time. (ECF 30, ¶ 7 and ECF 20, Ex. K). He did not pay those taxes either. According

5

to its plain terms, the agreement terminated at midnight on March 29, 2019. The agreement ceased to exist at that time. No further performance by either party remained due under the now-expired agreement. On April 8, 2019, the County sent written notice to Mr. Haynes confirming that the agreement was terminated upon his failure to perform by the contract deadline. (ECF 20, Ex. I).

The term "executory contract." is not defined by the Code. Several courts have adopted the "Countryman test," under which "a contract will be deemed executory only if material future performance obligations remain on both sides of the contract." *In re Old Carco LLC*, 2013 U.S. Dist. LEXIS 128358, *7 (S.D.N.Y. 2013) (internal quotations omitted); *In re Meehan*, 59 B.R. 380 (Bankr. E.D.N.Y. 1986) (quoting H.R. Rep. No. 595, 95th Cong. 1st Sess. 347 (1977)). *See also,* 3 Collier on Bankruptcy ¶ 365.02[2][a] (Richard Levin & Henry J. Sommer eds., 16th ed.). The Second Circuit has not adopted the Countryman test but has characterized an executory contract as one on which some performance remains due to some extent on both sides." *Old Caraco,* at *7.

"Section 365 only applies to a contract…in existence at the commencement of the case. If the contract…has expired by its own terms or has been terminated under applicable law before commencement of the bankruptcy case, there is nothing left for the trustee to assume." 3 Collier on Bankruptcy ¶ 365[2][e], *supra.* "A contract that has already been terminated according to its terms under applicable nonbankruptcy law leaves the trustee with nothing to assume or reject." *Id.,* at ¶ 365.06[4][e].

Here, the agreement granting the hardship deferral states: "[Y]our request for a hardship deferment of enforcement of foreclosure sale [of the property] was approved. *The deferment expires March 29, 2019, is unique to you and cannot be assigned, renewed or extended.*" (ECF

6

Case 2-19-20601-PRW, Doc 33, Filed 08/01/19, Entered 08/01/19 14:33:06, Description: Main Document , Page 6 of 10

20, Ex. G) (emphasis added). The agreement, dated May 1, 2018, required that Mr. Haynes fully pay the approximately $13,000 in back taxes on or before March 29, 2019 in lump sum. The agreement also required Mr. Haynes to pay any property taxes and assessments coming due during the deferment period, including the 2018 school taxes and 2019 county taxes. In keeping with the agreement, the County continued the foreclosure action and took title to the property on May 7, 2018. At that point, the agreement between the parties was simple—Mr. Haynes was obligated to pay the past due taxes in full by March 29, 2019, as well as fully paying the 2018 school taxes and 2019 county taxes when billed, and the County was obligated to defer the auction sale of the property during the period of the agreement.

March 29, 2019 came and went. And, Mr. Haynes did nothing. He didn't pay one penny of the past due taxes. He didn't pay the 2018 school taxes when billed. He didn't pay the 2019 County taxes when billed. At midnight on March 29th, the agreement terminated according to its unambiguous terms. No performance remained due by either party to the agreement after that date because the agreement ceased to exist. At that point, the contract was no longer executory. When Mr. Haynes filed this chapter 13 case a few months later, there was nothing left of the agreement for the trustee to assume. The contract no longer existed by its own terms. Because Mr. Haynes cannot resurrect the expired contract, the County is entitled to stay relief for cause.

**C.     The Amended Chapter 13 Plan Provides Neither Assurance of a Prompt Cure nor Assurance of Future Performance**

If the Court assumes, only for purposes of argument, that the deferral agreement was an executory contract that was in default when this case was filed, the trustee must satisfy the requirements of 11 U.S.C. § 365(b)(1) for the contract to be assumed. Those requirements, specified by Congress, are:

7

Case 2-19-20601-PRW, Doc 33, Filed 08/01/19, Entered 08/01/19 14:33:06, Description: Main Document , Page 7 of 10

> "If there has been a default in an executory contract…the trustee may not assume such contract…unless, at the time of assumption of such contract…, the trustee—(A) cures, or provides adequate assurance that the trustee will promptly cure such default…; (B) compensates, or provides adequate assurance that the trustee will promptly compensate, a party other than the debtor to such contract…, for any actual pecuniary loss to such party resulting from such default; and (C) provides adequate assurance of future performance under such contract…."

11 U.S.C. § 365(b)(1).

So, in order to assume the defaulted deferment agreement (hypothetically treated by the Court as an executory contract), Mr. Haynes must (1) promptly cure the payment default of $16,673 in delinquent taxes, plus $4168 in penalties and interest; (2) compensate the County for any pecuniary loss; and (3) provide adequate assurance that all future taxes coming due during the term of the plan will be paid in full and on time.

The County points to *In re Cunningham*, 485 B.R. 275 (Bankr. W.D.N.Y. 2013) (Bucki, J.), in urging this Court to find that no prompt cure is offered by Mr. Haynes as required by § 365(b)(1) of the Code. In *Cunningham*, the Court held that a group of chapter 13 plans, proposing to pay delinquent taxes in installments over a period ranging from between 2 and 5 years, was not a "prompt cure" under § 365(b)(1). The various debtors in *Cunningham* had entered into (and defaulted on) hardship deferral agreements with Chautauqua County. Those debtors, like Mr. Haynes, failed to make the required payment and the agreements appear to have expired by their terms before the chapter 13 cases were filed. The *Cunningham* Court "treated" the agreements as executory contracts and held that the debtors failed to provide for a prompt cure as required by § 365(b)(1). *Id.*, at 278. Specifically, the *Cunningham* Court found that "*the debtors have proposed plans that contain no provision for any lump-sum payment to the trustee, but which are funded instead through equal monthly payments extending over a period…from

8

two to five years to cure the outstanding default in the reacquisition agreements." *Id.*, at 278 (emphasis added). The Court found that the absence of a lump-sum payment by the debtors to the trustee did not provide the prompt cure mandated by § 365(b)(1).

Here, in response to the motion of the County, Mr. Haynes filed opposition at 4:58 p.m. two days before the scheduled hearing (a late submission) and an amended chapter 13 plan. (ECF 26 and 27). *See, Encore Property Mgmt., 585 B.R. 22, footnote 3 (Bankr. W.D.N.Y. 2018) (Warren, J.) (reminding the Bar that this Court had long-ago "ordered otherwise" for purposes of Rule 9014 FRBP by requiring opposition to motions to be filed not less than three days before the return date of a motion).* In his amended plan, Mr. Haynes proposes to pay the delinquent taxes of $16,672.58 in monthly installments of $848.04 over a period of 22 months. He also proposes to pay the penalties and interest of $4,168.21 in monthly installments of $68.80 over a period of 60 months. (ECF 26, ¶ 3.1 and ¶ 8.1). And, he proposes to pay the trustee an additional $201.08 each month for 60 months. *Id.* He would also be required to pay all future real estate taxes as they come due during the term of the plan. (ECF 26, ¶ 4.1). *See also,* 11 U.S.C. § 1322(a)(2) (requiring full payment of all priority claims under § 507, which includes real estate taxes by operation of § 503(b)(1)(B)(i) and § 507(a)(2)).

There are a couple of serious problems with Mr. Haynes' approach. First, payment of the principal amount of unpaid taxes, in installments over 22 months, is not a "prompt cure" under § 365(b)(1). As in *Cunningham,* the absence of a lump-sum payment to the chapter 13 trustee, in short order, is not a prompt cure. The use of the word "prompt" by Congress strongly suggests that payment of the *full cure amount* is required to be made in short order, not by way of a leisurely stroll in that direction. Next, Mr. Haynes' own budget and amended plan demonstrates that he cannot provide adequate assurance that the past-due and future taxes will be paid

9

Case 2-19-20601-PRW, Doc 33, Filed 08/01/19, Entered 08/01/19 14:33:06, Description: Main Document , Page 9 of 10

promptly—in fact, those submissions demonstrate that he cannot afford to fund the amended plan. Mr. Haynes' total monthly income is $1,586. (ECF 1, Schedule I). From that income, he proposes to pay $848.04 monthly (past due taxes), plus $68.80 monthly (penalties and interest), plus $351.64 monthly (current and future taxes), plus $201.08 monthly to the trustee (plan payments)–for a monthly total payment of $1,469.56. (ECF 1, Schedule J and ECF 26, ¶¶ 3.1, 4.1 and 8.1). That leaves Mr. Haynes with $116.44 a month to pay the remaining living expenses that he identified in Schedule J. (ECF 1). Those living expenses total $716.56. (ECF 1, Schedule J). According to his own budget and amended plan, Mr. Haynes has a *negative monthly cash flow* of (*-600.12*). The amended plan proposed in this case is not feasible on its face.

The Court finds that, even if the hardship deferral agreement is determined to be an executory contract, Mr. Haynes has failed to propose a plan that will enable the trustee to make the prompt cure and adequate assurances required by 11 U.S.C. § 365(b)(1). In fact, his amended chapter 13 plan and budget resoundingly demonstrates that Mr. Haynes lacks the resources to cure the past due taxes, with penalties and interest, and pay new taxes as they come due. Regrettably, Mr. Haynes' difficult current financial situation makes it impossible for him to afford even the modest house at issue. The County is entitled to relief from the automatic stay, for cause, under 11 U.S.C. § 362(d)(1).

## V.
## CONCLUSION

The motion of Steuben County to lift the stay is **GRANTED** for cause, under 11 U.S.C. § 362(d)(1).

**IT IS SO ORDERED.**

DATED: August 1, 2019              _____/s/_____
    Rochester, New York         HON. PAUL R. WARREN
                                       United States Bankruptcy Judge